Good morning. May it please the Court, Tracy Dressner for Petitioner Mark Simon. This is a troubling case with a sad resolution. There were numerous red flags in the case concerning Mr. Simon's mental health, and the Court and his attorney both acknowledged it and danced around it, and then at the end of the day nobody declared a doubt about his go to sentencing, and then his trial attorney is seeking funds for a mental health expert a little too late. And that just poses a lot of questions about what the judge and the attorney were thinking. But there was never a question in anybody's mind but that Mr. Simon had a mental illness. And having a mental illness does not translate necessarily into a lack of competence. And I don't see seeking the evaluation at sentencing necessarily as being a doubt as to his competence as much as perhaps being sought for purposes of mitigation or for purposes of proper placement for mental health treatment during his period of incarceration. There was nothing in the record where the attorney questioned his competence to stand trial even though he obviously suffered from a mental illness. And the trial judge interacted with him on several occasions where the trial judge didn't sense a lack of competence even though he might have thought that he was exercising poor judgment. Well, I generally agree with your statement, and I do acknowledge that the record is lacking any concrete evidence of his incompetence. But you have several red flags that suggest maybe it was, and it's hard to tell from a cold record how somebody is actually behaving and operating. But you have the judge who first raises the issue of Department 95. And so something that she was seeing in the court had to have given her a red flag. And then she questions his thinking because he's turning down this four-year plea offer when the prosecutor's perhaps coming in with the third strike and the possibility of 25 years to life. So that is an indicator that she thinks he's maybe not thinking rationally. The judge pushes numerous occasions to have the family talk with him, to take in the plea offer. And then there's also this issue about the jail starting him on lithium the weekend that the trial is going to begin. And again, the record, the cold record, doesn't really inform us, but jails don't willy-nilly prescribe lithium. There had to have been something that was happening that gave them a reason to medicate him. But there was. He had a long established history of a mental illness. And I think one of the comments was he was restarted on lithium as if he probably had been on it before or some type of medication. And the fact that he may have been unreasonable and making poor judgments, as in not taking a beneficial plea offer, doesn't mean he's not competent. Doesn't mean he doesn't understand and able to assist in his defense. It just means that his judgment is bad. Well, but really that's an issue for a mental health professional to assess whether the degree of that unreasonableness is related to a competency issue or not. But the question that I have is related to our standard of review, which is rather cabined in this collateral situation. So how is it that the record that does exist meets the standard for an unreasonable determination by the state court? Well, I think there's a couple of things. The red flags that I pointed to. And again, if there had been a doubt declared about his competency, we would have had a much more expansive record and we would have had a mental health evaluation. What we can base this on is that in the, I'm sorry, was there a question? Go ahead. Was in the prison records that were submitted on habeas, and they did post-date the trial, but the reason that they're critical is they document his history in there. He had a traumatic brain injury. He obviously had a number of psychiatric episodes and a long psychiatric history. And it documents his behavior and his irritability and his problematic thinking when he's not medicated. And those are important because the jail then made a determination that he needed lithium. And so if you put all those together, you have a question about whether his judgment was a result, whether his judgment rose to the level of an incompetency. And the only way we would be able to determine that was had he been evaluated at that time. Going back to Judge Graber's point, doesn't that show that the California state courts had that question? They resolved it. And our standard of review is highly deferential. I admit this is a tough case, and I received it in a tough position. And frankly, had I had this case earlier, I would have done things a lot differently. But one of the things that the attorney could have done was to obtain those prior history records. And perhaps, and again, this is a little bit tangential to the IAC, but I think sort of inclusive of it, was that there was obviously this was a man who was mentally ill, and this was a kind of bizarre crime that really doesn't scream out for a nine-year state prison sentence, and that this judge seemed like she was willing to try and work to do some kind of better resolution. And the trial attorney just fell down on it. The judge invited her to assist. We're looking at it, and I think you're well aware, on whether or not the state court's determination of what occurred below was unreasonable. And I think we have to just include in that review that the state court reviewed this and thought that nothing would have gone differently if there had been a competency hearing. So let me ask you what you would highlight or what you think would have gone differently if there had been a competency hearing. I think there's two answers to that, and I'll acknowledge that they're speculative, in part because we don't really know what his functioning was then. But clearly there was an issue about his ability to think rationally about the four-year plea offer. And so it's possible that had he been competent, and let's presume that there had been a competency hearing and had been found incompetent, that if he was competent, that he might have taken this four-year plea offer and not be serving a nine-year sentence. The other has to do with his testimony, which on the cold record leaves out the part that his attorney said, you know, there were long pauses before he answered, so we have to assume there were long pauses that you can't tell from the record. But more troubling was that he said multiple times in his testimony that he didn't really remember what happened, and he was basing his testimony on the testimony that he had heard. Well, that's really not the way somebody should be testifying, and it wasn't necessarily in his best interest to be repeating back some of the testimony he'd heard earlier, which was detrimental to him. And so perhaps had he been competent, he might have made a decision not to testify, or he might have made a decision, he might have understood that your testimony should be based on what you personally remember, and that if you don't remember it, you say you don't remember it, you don't fill in the blanks based on what you heard somebody else said. With that, I'll reserve my time that's left. I understand it's a tough review. This is a tough case, and, you know, it's troubling that the judge, at the end of the day, after being fairly sympathetic, nails him with a nine-year sentence and then tells him that he's going to get appropriate mental health treatment, that that's a good place for him to be, which is not at all the case. And sort of that, when you hook that with the judge's suggestion that the issue of, she said, I struggled with the issue of whether I should appoint two psychiatrists. Well, why would she do that, again, unless she was seeing something? And then she says, well, we can put that off until after one year, we can put that off until after the trial. Well, that's the whole point of having an evaluation, and why you would wait until later is just really troubling. But you said the judge hit him with a nine-year sentence, but wasn't that what the judge had to do under, I mean, was there? She could have. She could have struck a strike or done something else. There were some other options, but they looked like they weren't really very well litigated. And even, unfortunately, the trial attorney's sentencing memorandum barely mentions any mental illness. Even when Mr. Simon, in his testimony, volunteers that he's got a mental illness, the judge strikes it because it wasn't in response to a question, and then his attorney doesn't follow up and actually elicit it so that it can properly come in. So there were a lot of things that are troubling about the case, and I do recognize that I have a tough standard despite the troublingness. Thank you. Thank you. We'll give you a minute for rebuttal when the time comes. Thank you. We'll hear from the State. Good morning, Your Honors. May it please the Court. Viet Nguyen for the warden. Petitioner is not entitled to habeas relief in this case. As to Claim 1, a reasonable judge could find no bona fide doubt concerning Petitioner's mental competency. The record showed that Petitioner was alert, articulate, and unafraid to address the Court. The record showed that Petitioner and counsel conferred throughout the proceedings. The record also showed that Petitioner stated he understood his right not to testify and testified at trial. At sentencing, Petitioner personally addressed the Court, took responsibility for his actions, and asked that he be given treatment for his mental illness. Petitioner also waived his constitutional rights on another case and pled no contest to petty theft. But there were also this whole kind of this question of specter, questioning grace because defense counsel was sort of making these statements to the judge about or referring to the defendant's competency or his mental illness. And the judge was sort of this volleying back and forth of who should be responsible to pursuing his question of mental stability at that time. I don't know, it was just kind of this odd back and forth repertoire between the judge and the defense counsel. What are we to make of that? I think defense counsel and trial court were referring to Penal Code 1368, and that a trial judge on his own motion can order a competency hearing, but in that code itself it asks for defense counsel's input. And when asked for his input, defense counsel said, the only thing I can tell you is that he recently started lithium carbonate, and that he is more reserved and withdrawn than he was before. And so that was the colloquy back and forth pre-trial. It was just this sort of process. Yes, but that's exactly what is being challenged here is the sufficiency of what the lawyer did in response. So I guess it is somewhat frustrating that the lawyer didn't push farther, but that doesn't necessarily mean it's unreasonable what the state court did. Correct. The standard here is whether a reasonable judge could find no bona fide doubt based on the record that the trial court had before it. And there they only simply had a statement from, especially pre-trial, they only had a statement from defense counsel when asked for his input, or her input, was that she could only tell the court that he had recently started lithium carbonate. Well, but the court knew he had a history of mental illness. Correct. But although there was evidence that he suffered from mental illness, there was just no evidence that that mental illness rose to the level of incompetency. So why wasn't the counsel ineffective for not requesting a competency review or hearing? There was no evidence that a petitioner was able to confer and help in his defense or didn't understand the rational or factual basis of the proceedings, and that's the level of incompetency. Again, the record reflects that petitioner and counsel conferred throughout trial, and there was no, after those conferences, there was no indication that defense counsel ever expressed concern about a petitioner's rational competency. I really kind of find it a little remarkable the judge's observation that prison was the best place for Mr. Simon's mental health treatment. I mean, was that really appropriate comment at that point? I mean, when you hear that comment in light of the context, it just makes you question a little bit what was going on. You know, I can't speculate. I just know that from the record it appears that he wasn't getting mental health treatment. I think when the four-year plea offer was made, I think a petitioner countered saying, you know, he would serve no time and maybe go to mental health or seek mental health treatment and live with his sister, but that's the only thing he said. He said, maybe I would go and seek mental health. So maybe that was a comment on the fact that at the time a petitioner maybe was not getting any kind of treatment. But I can only speculate. I don't know what the trial court meant when it said that. In sum, habeas belief is not warranted in this case because the California Court of Appeals' denial of claims 1 and 2 were not unreasonable. Accordingly, we respond and respectfully request that the district court's judgment be affirmed. Thank you. I don't believe we have any further questions. You may have a minute for a bono. Two points. One, a number of comments that were just made are not present in the record. Like, I don't understand how we'd know from the record that Mr. Simon was alert and articulate or that he conferred throughout trial with his counsel. That's not evident at all from the record. Or in regard to his waiver of the rights, all he did was say yes or no. And, again, that doesn't ‑‑ somebody could be incompetent and be able to say yes or no, but you don't know whether they were rationally thinking about that or understanding it. And then the standard is what a reasonable judge would do. And with all respect to the trial judge, I don't know that she was operating reasonably. She repeatedly questioned mental health. Like, is this a Department 95 case? I agonized over this case. I thought about hiring two experts. But she also observed in sentencing that he had behaved all throughout the trial, which I ‑‑ to mean that behaved normally. Well, I think it mean behaved and didn't act out as opposed to ‑‑ but one could be incompetent and sit there docilely at counsel table. He did respond to the judge's questions. I mean, there's an inference that can be drawn from the discussion that's in the record. He was not understanding what was happening. He did ‑‑ he answered yes or no to the waiver questions. He did testify. Again, there was, according to counsel, long pauses. And he did say a number of times, I don't know, I don't understand the question. I don't understand the question. He did say he documented a good 10 or 12 pages where he says that. And then he does accept responsibility because the judge does give him a little sentencing break. He had two misdemeanor cases that were joined at the end. And the judge basically said, I'm going to not give you an extra two years. And so, you know, and then she says, I'm proud of you for accepting responsibility and you're going to go to prison and be able to help other people there. And just kind of some things that are a little bizarre. And so it does raise the question whether a reasonable judge who had been in that trial court's position who had made the statements that they made would have taken the next obvious step and declared a doubt and had him examined. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments from both of you.
judges: Graber, Murguia, Bolton